Tueley, J.
delivered the opinion of the court.
The defendant sold to the plaintiff his equity of redemption in a tract of land, called Woodlawn, and covenanted in *365 his deed as follows: “Whereas, there is some doubt as to whether the tract will hold out or contain four hundred acres, which I hereby obligate myself it shall contain, free from any interference or claim of any other person whatever; and in case it should not measure as aforesaid four hundred, acres of land, I hereby obligate myself, heirs, &c., to refund to said' Elder, at the rate of twenty dollars per acre, for any deficit, with interest fro'm the 1st day of July, 1842.
The plaintiff, supposing that there was a deficit in the tract of land, instituí ed his action upon this covenant, in the circuit court of Montgomery county. Upon the trial, it appeared that the land had been surveyed by the county surveyor; that one of the lines including the same, calls to run up the Cumberland river with its meanders four hundred and fifty-two poles; that measuring this line along the margin of the river at a medium distance between high and low water, the tract falls short of four hundred acres by forty-six acres and ten poles; measuring at the lowest stage of the water, the deficit is nineteen acres; but measuring to the centre of the river there is no deficit. And the question presented for the consideration of the circuit court was, which of the modes of measurement was the correct one. Upon this subject, the circuit Judge charged, “That when a deed called for running to Cumberland river, thence up the river, the location of the line should be at the centre of the river and not at low water mark.” Upon which, there was a verdict and judgment for the ^defendant, and an appeal to this court on the part of the plaintiff.
The same question, as to the legal mode of running the line, which was presented to the circuit Judge, is now brought before us for our adjudication; and its solution depends upon whether the Cumberland river is to be considered a navigable stream, and the boundaries of lands lying upon it are or are not to be restricted to the low water mark.
It is not doubted, but is a settled principle of the English law, that the right of soil of owners of land bounded by the sea or on navigable rivers, where the tide ebbs and flows, extends to the high water mark; and the shore below common *366 but not extraordinary high water mark belongs to tbe public; but grants of land bounded by rivers or upon the margin of the same, or along the same, above tide water, carry exclusive right and title of the grantee to the centre of the stream. This is the well settled ‘common law doctrine of England, and is, in a few words, this: “The right of grantees to land lying on rivers above tide-water, extends to the centre of the stream, but upon those where the. 'tide ebbs and flows, is stopped at ordinary high water mark.”
This principle, if applicable to our State, settles this case in favor of the defendant. But, is it applicable? We think it is not, and is no portion of our common law, either by adaption or usage.
All laws are, or ought to be, an adaptation of principles of action to the state and condition of a country anil to its moral and social position. The common law, as we have hitherto had occasion to observe, consists of such principles, matured and established by the ‘Judges of England, upon a fitness of things, ascertained by observation and experience. There are many rules, of action recognized in England as suitable, which it would be folly in the extreme, in countries differently located, to recognize as law; and, in our opinion, this distinction between rivers navigable and not navigable, causing it to depend upon the ebbing and flowing of the tide, is one of them.
The insular position of Great Britain, the short courses of her rivers, and the well known fact that thera/ are none of them navigable above tide water, but for very, small craft, well ^warrants the distinction there drawp by the common law. But very different is the situation of the continental powers of Europe in this particular. Their streams are many of them large and long, and navigable to a great extent above tide water, and accordingly we find that the cmTTaw which regulates and governs those countries, has adopted a very different rule, as to what are or are not navigable streams; and by it, all rivers even above tide water, provided they are navigable for ships or boats, are considered as public property.
Now, these principles of the common and civil law are *367 not in conflict with one another; they are both right and proper for the countries to which they are made to apply. In England, there are no streams navigable above tide water; but the reverse is true of the continent, and the end designed to be effected, both by the common and civil law upon this subject, is identical, viz: that navigable rivers shall not become private property, but shall belong to the community at large. If the local situation of the continent of Europe required an extension of the construction of what was necessary to constitute a navigable river, and prevented its restriction to tide water, much more so does that of our own country, and particularly the valley of the Mississippi.' Our rivers are of immense extent, and size, and navigable for thousands of miles above their mouths. So, to adopt the English principle, that no river is a navigable river above the ebb and flow of the tide, would be to declare that there is no river navigable in the valley of the Mississippi; and that the Mississippi, Missouri, Ohio and Tennessee, do not belong to the public, but are the property of individual owners of land upon their margins — an absurdity too monstrous to be thought of. Shall it be held that the interest of the community of England requires that their navigable streams should belong to the crown as public property, but that in all the States bordering on the Mississippi and its mighty tributaries, these great and important highways by which such an amount of merchandize of every kind and description is annually sent to market, shall belong to private individuals, because the tide does not ebb and flow in them? Surely not, unless we are compelled by positive law so to maintain.
Upon what principle can it be contended that the rule of the common law of England, as to what makes a navigable river, is obligatory in the State of Tennessee? I trust I have shown satisfactorily that it is one not adapted to our position. It has never been recognized by our courts, and is not adopted, as we think, by the act of 1788, chap. 5, which provides that such parts of the common law as were heretofore in use in the Territory, not destructive of or repugnant to, or inconsistent with the freedom and independence of this State, and the frame of government therein established, and which are *368 not abrogated, expired or become obsolete, shall be in full force in this State. Now, this principle of the common law which is under consideration, is so obviously at war with the position of our country and its best interests, that we hesitate not to say, that it had never been in force and use in this State, while it was a Territory, and is, therefore, not forced upon us by the act of 1787.
We are aware that in a portion of the States of this Union, this question has been differently held, but it is to be observed of them, that they are located upon tide water, and may have felt that the principle of the common law was applicable to their position. It, however, has received a different construction from the supreme court of North Carolina in the case of Wilson vs. Forbes, 2d Dev. 36, where it is held that the English rule for determining whether a river is navigable or not by the ebb and flow of the tide is not applicable to that State. If not there, most assuredly not'here. We are satisfied that the question w;as correctly decided by that court, and adopt the principle therein recognised, “that the owners of land on a navigable stream above tide water, has title only to ordinary low water mark, and not to the centre of the stream.”
In holding otherwise in this case, the circuit judge erred, for which the judgment must be reversed, and the case remanded for a new trial.